## CRAWFORD COUNTY BANK v. BOLTON.

### Opinion delivered July 13, 1908.

1. TRUST—INDIRECT PURCHASE BY ADMINISTRATOR AT HIS OWN SALE.—The rule that a purchase by an executor or administrator at his own sale is voidable at the election of those who may be interested in the estate applies where a bank in which an administrator · is cashier and stockholder buys at a sale made by such administrator. (Page 146.)

2. SAME—JURISDICTION AT LAW TO ENFORCE.—As a purchase by an administrator indirectly at his own sale is voidable merely and not void, the defense that such a purchase is voidable can not be interposed in a suit at law, but should be raised in equity and upon equitable terms. (Page 147.)

3. ACTION—WRONG FORUM—PRACTICE.—Where an answer in an action at law sets up a defense exclusively cognizable in equity, a demurrer to it should not be sustained, but should be treated as a motion to transfer to the chancery court. (Page 147.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans,* Judge; reversed.

#### STATEMENT BY THE COURT.

This is an action of ejectment brought by the Crawford County Bank against U. S. Bolton and Belzora Bolton in the Crawford Circuit Court for the recovery of forty acres of land, situate in Crawford County. The defendants answered, setting up among other defenses that the lands were held by the bank as trustee for them. The plaintiffs filed a demurrer to the answer of the defendants, but no action was ever taken on it by the court.

The following is the statement of facts as agreed upon by the parties to this action, and upon which the said cause was submitted to the court for its decision:

W. H. H. Lovett died on or about the 12th day of August, 1891, in the county of Franklin, intestate, leaving a wife, who died shortly thereafter, on the.......day of................. 1896, and the following children: Belzora Bolton, wife of U. S. Bolton and one of the defendants, J. C. Lovett, Angeline Branner, nee Lovett, Relda Nelson, nee Lovett, B. R. Lovett, the last three of whom were minors at the time of the death of the deceased; that said Lovett died seized and possessed of the N½ of the N. W¼, sec. 2, T. 10 N., R. 29 W.; that on the 28th day of January, 1886, the deceased entered into a contract with the Little Rock & Fort Smith Railway for the purchase of the N. W.¼, N. E.¼ sec. 2, T. 10, N. R. 29 W., which adjoins said last tract on the east, and went into possession of the same under his contract, and was in possession, at the time of his death, as part of his homestead; that the legal title to the said N. W.¼ N. E.¼ sec. 2, T. 10 N., R. 29 W., was in the Little Rock & Fort Smith Railway at the time of the death of said W. H. H. Lovett, subject to the terms of the said contract of purchase and subject to foreclosure for nonpayment of any of the yearly payments or interest due on said land; that all of the said lands were in Franklin County at the death of the said deceased; that afterwards, by an act of the General Assembly of the State of Arkansas at its session of 1895, said N. W.¼ of N. E.¼ sec. 2, T. 10 N., R. 29 W., was detached from Franklin and made a part of Crawford County, where it remains; that at the time of the death of the said W. H. H. Lovett he was living upon and occupying the said 120 acres of land as his homestead; that on the said contract for the purchase of the said N. W.¼ N. E.¼ sec. 2, T. 10 N., R. 29 W. (the land in controversy in this action) the deceased prior to his death had paid the sum of $43.48; that after the death of the deceased the widow and heirs of said Lovett paid the remainder of said contract price, to-wit: $53.90, the last payment having been made on the 1st day of November, 1892. The said Little Rock & Fort Smith Railway Company on the 1st day of November, 1892, executed its deed for the same

to W. H. H. Lovett over the protest and objection of the heirs of said deceased, who demanded that the deed be made and executed to them; that after the death of the widow of the deceased the defendants with their minor children moved on said land, which had been occupied by the widow and children since the death of the said Lovett, and continued to live jointly thereon with the said minor children until the youngest become. of age, since which time the defendants have occupied the same exclusively; that the defendant, Belzora Bolton, took deed from the heirs of W. H. H. Lovett, deceased, as per her exhibit to her answer for the lands mentioned therein; that the said W. H. H. Lovett died intestate, leaving no personal estate in excess of that by law allowed to be retained by the .widow as her absolute property, and that said 120 acres of land occupied by him as a homestead do not exceed in value the sum of $2,500; that S. A. Pernot was on the 24th day of January, 1900, duly appointed by the probate court of Franklin County as administrator of the said estate of W. H. H. Lovett, deceased; that he applied to the said probate court for an order to sell the said N. W.¼ N. E.¼ sec. 2, T. 10, N., R. 29 W. (the land in controversy) for the purpose of paying the debts probated against said estate.   Order of sale was made on the........day of November, 1905, a day of the November term, 1905, the land sold on the 20th day of December, 1905, to the Crawford County Bank for the sum of $200, the sale confirmed by the probate court of Franklin County February 12, 1906, and deed made by the administrator March 20, 1906.   S. A. Pernot at the time of his appointment as such administrator and sale made by him was a stockholder and cashier of the Crawford County Bank, a corporation organized and operating under the laws of the State of Arkansas; that B. R. Lovett, the youngest of the children of said W. H. H. Lovett, deceased, reached the age of 21 years on the.........day of................., 1899 or 1900.

The cause was tried before the court without a jury.   The court found that the deed of the administrator to the plaintiff was void and of no effect, and that the plaintiff for that reason was not entitled to recover the land.   The court therefore adjudged that the plaintiff take nothing by its action.

Plaintiff has appealed.

*L. H. Southmayd* and *Jesse Turner,* for appellant.

1. The fact that the administrator who sold that land in controversy to appellant was the cashier and a stockholder in said corporation does not affect the validity of the sale. 26 Am. & Eng. Enc. of L. 899-900; 7 *Id.* 634; 122 Ill. 293; 4 Ark. 357; 15 Am. & Eng. Enc. of L. 934; 63 Ark. 322; Morawetz on Corp. § 521; 68 Fed. 677.

2. The validity of the sale can not be attacked in this proceeding. The sale was, at most, voidable, and could be avoided by appellee, if at all, only by appropriate action taken in apt time in a court of equity. 17 Am. & Eng. Enc. of L. 993; 19 Ark. 499; 31 Ark. 74; 44 Ark. 267; 47 Ark. 413; 13 Ark. 507; 38 Ark. 78; 11 Am. & Eng. Enc. of L. 1148; 46 Ark. 25; 48 Ark. 248; 55 Ark. 85; 75 Ark. 40; *Id.* 184; 70 Ark. 88. Appellee's rights, if any, are based upon the theory of a trust, and of trusts and trustees chancery has exclusive jurisdiction, and indeed of each of appellee's defenses chancery has exclusive jurisdiction. 22 Enc. of Pl. & Pr. 9; 59 Ark. 5. Where the answer presents some defense exclusively cognizable in equity or where all the issues are cognizable but not exclusively so, the circuit court should transfer the cause. 44 Ark. 458. Having properly brought its suit at law, it was not appellant's duty to move to transfer—that was for appellee. 49 Ark. 75; Kirby's Digest, § 1282.

3. Before appellee was entitled to relief against the binding force of the probate orders, judgments and deed executed in pursuance thereof, the effort to avoid the sale must have been made in apt time, and appellant should have been tendered the amount of the purchase money, with interest, taxes, etc. 47 Ark. 421; 54 Ark. 644.

*Sam R. Chew,* for appellees.

1. There was never a fee simple title to the land in controversy in W. H. H. Lovett. Long before the Railway Company had been paid, and before it had executed deed, he died. His estate had only an equity in the land to the extent of the small payment he had made, but it had no fee, and appellant

could not, through him, obtain one.  Tiedeman, Real Prop. § 814; 178 Ill. 9; 44 L. R. A. 489; 59 Am. Dec. 590. There could be no finding under the proof, except for appellees, and the judgment for this reason should be affirmed.

2.  The administrator of the estate being also a cashier of and a stockholder in the bank at the time the sale was made to it, his acts constituted a fraud upon the estate, and this is a defense which may be availed of at law.  Kirby's Digest, § 6098; 70 Ark. 505; 71 Ark. 484.

HART, J., (after stating the facts).  The plaintiff and defendants in this case deraign title from a common source. Plaintiff became the purchaser of these lands at an administrator's sale made by the administrator of the estate of W. H. H. Lovett, deceased.  The purchase money was paid, and the sale was duly confirmed by the probate court.  At the time of the sale, the administrator was cashier and a stockholder in the plaintiff bank.  The plaintiff contends that this did not in any way affect the validity of the sale.  We do not think this position can be successfully maintained.  The rule is firmly established, both by the text writers and the adjudicated cases, that a purchase by an executor or administrator at his own sale is not void, but is voidable at the election of those who may be interested in the estate.  3 Pomeroy's Equity Jurisprudence, § 1077, 3d Ed.; 11 Am. & Eng. Enc. of Law, 1148; *McGaughey v. Brown,* 46 Ark. 25; *Gibson* v. *Herriott,* 55 Ark. 85; *Montgomery* v. *Black,* 75 Ark. 184.

This is true without regard to the motive or intent of the administrator.  It is an ancient and well-settled doctrine that his purchase, either directly or indirectly, no matter how honest, whether at private sale or public auction, makes him a trustee for the beneficial owners, and the sale may be avoided by them at their option.  The reason for the rule is thus aptly stated by one learned text writer: "However innocent the purchase may be in the given case, it is poisonous in its consequences." A stockholder, and more especially the cashier, who is largely responsible for its success, is interested in the financial prosperity of a bank.  Whether the interest is large or small is of no moment; for what would appeal to the cupidity of one man would be no temptation to another.

The rule is that the executor or administrator stands in a fiduciary relation to those interested in the estate. It is his duty to conduct the sale and to report to the court any fraud or collusion in bidding or any other facts or circumstances that would warrant the court in not confirming the sale.

The rule stands "upon one great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity."

The sale being merely voidable and not void, the defense could not be interposed in a suit at law; for the avoidance is at the election of the *cestui que trust,* and upon exercising his election to avoid the sale the purchaser is entitled to be credited with payments for the purchase, if applied in the administration of the estate for taxes, necessary repairs, etc. 2 Woerner, Administration, 1088.

Courts of law have no power to set aside a sale because the administrator was interested in the purchase. This is for the reason that the sale is not void, but merely voidable at the election of the beneficial owners of the estate; and if they seek to set it aside, they must observe the maxim of "he who seeks equity must do equity." The doctrine of granting relief upon terms or conditions imposed is not known at law, but is purely a creature of equity.

In the case of *Doe* v. *Harvey,* 3 Ind. 104, the court held that a sale of land by an administrator for the payment of debts will not be set aside at law because the administrator himself became the purchaser. In discussing the subject, the court said: "We have found no case where such a purchase has been held void at law, and there seems to be weighty reasons why it should be set aside only in equity." In the case of *Jones* v. *Graham,* 36 Ark. 384, the court held that if an administrator purchases land sold at a trust sale for a debt due his intestate, he holds the land as trustee for the benefit of the estate; and the probate court had no power to denude him of the trust.

In the case of *Horsley* v. *Hilburn,* 44 Ark. 478, the court in effect held that it is imperative upon the circuit court to transfer a case to the equity docket which set up a defense exclusively cognizable in chancery. See, also, *Newman* v. *Mountain Park Land Co.,* 85 Ark. 208; *Rowe* v. *Allison, post* p. 206. The de-

murrer to the answer should not have been sustained; for the averments of the answer presented an equitable defense, and, under our statutes, it is the duty of a defendant, when sued at law, to make all the defenses he has, both legal and equitable. *Daniel* v. *Garner*, 71 Ark. 484; Kirby's Digest, § 6098.

The court should have treated the plaintiff's demurrer as a motion to transfer to the chancery court. Therefore the cause is reversed with directions to transfer it to the proper chancery court.